*FILED*

2018 MAR -8  PM 3: 15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>                  v.<br><br>MICHAEL HENSCHEL,<br>    aka "Mickey,"<br>    aka "Frank Winston,"<br>    aka "Steve Lopez,"<br>    aka "Ron Berman,"<br>CAMERINO ISLAS,<br>    aka "Mino,"<br>CLAUDIA ISLAS,<br>    aka "Jessica,"<br>JUAN CARLOS VELASQUEZ, and<br>EUGENE FULMER,<br>    aka "Gene,"<br><br>                  Defendants. | CR No. 17-350(A)-VAP<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy; 18<br>U.S.C. § 1341: Mail Fraud<br>Affecting a Financial Institution;<br>18 U.S.C. § 157(1): Bankruptcy<br>Fraud; 18 U.S.C. § 2: Aiding and<br>Abetting and Causing an Act To Be<br>Done; 18 U.S.C. § 982: Criminal<br>Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.    INTRODUCTORY ALLEGATIONS

1.    At all times relevant to this First Superseding Indictment:

a.     Defendant MICHAEL HENSCHEL, also known as ("aka") "Mickey," aka "Frank Winston," aka "Steve Lopez," aka "Ron Berman" ("HENSCHEL"), was a resident of Van Nuys, California.

b.     Defendants HENSCHEL, CAMERINO ISLAS, aka "Mino" ("CA. ISLAS"), CLAUDIA ISLAS, aka "Jessica" ("CL. ISLAS"), JUAN CARLOS VELASQUEZ ("VELASQUEZ"), and EUGENE FULMER, aka "Gene" ("FULMER"), together with Lidia Alvarez, aka "Lidia Martell" ("Alvarez"), Shara Surabi, aka "Sean Parsi" ("Surabi"), co-conspirator No. 4 ("CC-4") and co-conspirator No. 5 ("CC-5"), worked for, through, and with a business that defendant HENSCHEL owned and operated out of offices in Van Nuys, California, under various names, including "Valueline," "Trustee Sale Stoppers," "Trust Title Services," "California Property Management," "Cal Property Assist," "Pacific Group Assist," "Asset Help Trust," "Southland Property Management Trust," "So Cal Trust No. 2," "Barrington Property Investment Group," "Carson Covina Associates," "Arrowhead Financial Group," "Cerritos West Group," "Darby Group," "Pacific Southwest Construction," "Mountain Holdings 2009 Trust," "Laguna 2010 Trust," "Cartwright No. 2 Trust," "Westland Management No. 2 Trust," "Eastside 2004 Trust," "Prime Ventures Trust," "XCEL Enterprise Trust," "Nova Group Trust," "Option Financial Trust," "Grand Slam Ventures Trust," "Rancho Enterprises Trust," and the names of many other trusts and corporations (collectively, the "HENSCHEL-controlled entities").

c.     A property owner could convey an interest in real property by executing a grant deed or a trust deed to be recorded on title to the property, and a grantee or a creditor, including a mortgage lender, could record an interest in property by filing a

1  grant deed, a trust deed, or other lien with the county recorder's
2  office in the county where the property was located.

3       d.    The county recorder's offices for Los Angeles County,
4  Alameda County, San Diego County, and other counties in California
5  mailed confirmation of recorded filings to addresses listed on the
6  face page of the filing; the mailing was a legally-mandated part of
7  the process of officially recording deeds and other filings on title
8  pursuant to California Government Code Section 27320 et seq.

9       e.    The filing of fraudulent documents on title to
10 property clouded title to the property, potentially preventing its
11 sale or transfer, at least until the fraudulent filing was removed
12 through a reconveyance or through judgment entered in an action to
13 quiet title.  The process of unclouding title from fraudulent filings
14 was expensive and time consuming.

15      f.    A bankruptcy case was commenced with the filing of a
16 bankruptcy petition.  A person or entity seeking relief from debts,
17 referred to as the "debtor," could file a voluntary petition for
18 bankruptcy.  Alternatively, creditors could file an involuntary
19 petition for bankruptcy against a debtor.

20      g.    The filing of a bankruptcy petition triggered what is
21 known as an "automatic stay" against the debtor's creditors, who were
22 immediately prohibited from taking any action, including pursuing
23 foreclosure and eviction actions, against the debtor and any property
24 owned and possessed by the debtor when the bankruptcy case was
25 commenced, unless permission of the bankruptcy court was first
26 obtained.

27      h.    Bank of America, N.A. ("Bank of America"); Wells Fargo
28 Bank, N.A. ("Wells Fargo"); Washington Mutual, Inc. ("WAMU"),

JPMorgan Chase Bank N.A. ("JPMorgan Chase"); HSBC Bank USA, N.A. ("HSBC"); and Flagstar Bank FSB ("Flagstar Bank") were all federally chartered and federally insured financial institutions engaged in the business of mortgage lending, and as such they were each a "financial institution" within the meaning of Title 18, United States Code, Section 20.  Creative Investment Group, Inc. ("CIG") was also engaged in mortgage lending and was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

i.   The filing of fraudulent documents on title to property, including filings designed to delay foreclosure and eviction proceedings, adversely affected financial institutions such as Bank of America, Wells Fargo, WAMU, JPMorgan Chase, HSBC, Flagstar, and CIG that held interests in the subject properties.

B.   THE OBJECTS OF THE CONSPIRACY

2.   Beginning on a date unknown but no later than in or about March 2009 and continuing through at least in or about January 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants HENSCHEL, CA. ISLAS, CL. ISLAS, VELASQUEZ, and FULMER, together with Alvarez, Surabi, CC-4, CC-5, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses:

a.   Mail fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1341; and

b.   Bankruptcy fraud, in violation of Title 18, United States Code, Section 157(1).

C.   THE MANNER AND MEANS OF THE CONSPIRACY

3.   The objects of the conspiracy were carried out, and were to be carried out, in substance, as follows:

1        a.   Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, VELASQUEZ,

2   and FULMER, and other co-conspirators, would identify homeowners who

3   were in financial distress and/or who held equity in properties that

4   could be targeted as part of the fraud.  The targeted homeowners

5   included those homeowners who: had defaulted on their mortgages;

6   owned property subject to foreclosure proceedings; were interested in

7   refinancing or obtaining new mortgages; owned properties in

8   disrepair; and/or owned properties subject to tax liens, other

9   creditor liens, and/or tort actions (collectively, the "targeted

10  homeowners" or "homeowners").

11       b.   Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, VELASQUEZ,

12  and FULMER and other co-conspirators would file and cause others to

13  file fraudulent documents on title to the targeted homeowners'

14  properties, including: (i) fraudulent grant deeds purporting to

15  convey an interest in properties to HENSCHEL-controlled entities;

16  (ii) fraudulent trust deeds recording an interest in properties based

17  on fictional loans supposedly guaranteed by the targeted homeowners;

18  and (iii) other fraudulent liens recording an interest in properties

19  based on fictional debts supposedly owed by the targeted homeowners.

20  As discussed herein, these fraudulent documents are collectively

21  called the "fraudulent filings" and individually called a "fraudulent

22  filing."

23       c.   The fraudulent filings would cause county recorders'

24  offices to mail the original of the filings to addresses that

25  defendant HENSCHEL and other co-conspirators designated and, in some

26  instances, controlled.  Such mailings helped make the fraudulent

27  filings appear legitimate, by providing homeowners and others copies

28  of legally recorded instruments.  The mailings were also part of the

recording process that resulted in the fraudulent filings appearing on title to properties, which itself transferred title to HENSCHEL-controlled entities and/or clouded title, a prerequisite for the litigation-extortion part of the scheme described below.

Property Theft & Litigation Extortion

      d.    As part of the conspiracy, defendant HENSCHEL and other co-conspirators would falsely represent to targeted homeowners that defendant HENSCHEL was a sophisticated real estate investor and attorney who, if the homeowners wanted to sell their properties, would purchase the properties at fair market value and on fair market terms and, if the homeowners wanted to keep their properties, would help them protect the properties from creditors and other competing claims by, among other methods, placing the properties in trust, filing competing liens on the properties, and restructuring real estate holdings in such a way that the properties would be insulated from creditors and defendant HENSCHEL and other co-conspirators would manage the properties for the homeowners on an ongoing basis.

      e.    Defendant HENSCHEL and other co-conspirators would convince the targeted homeowners, using false pretenses and misrepresentations of material facts, to sign grant deeds that purported to convey properties to HENSCHEL-controlled entities and trust deeds that described fictional loans that the targeted homeowners supposedly guaranteed for unnamed third parties. Defendant HENSCHEL and other co-conspirators would file and cause others to file these fraudulent grant deeds and trust deeds (all of which were fraudulent filings) in county recorders' offices.

      f.    Defendant HENSCHEL and other co-conspirators would also convince the targeted homeowners, using false pretenses and

misrepresentations of material facts, to sign additional legal documents, including false and fraudulent: (i) purchase and sale agreements; (ii) amendments and addenda to those agreements; and (iii) escrow instructions, all of which made it falsely appear that the targeted homeowners agreed that the fraudulent filings were legitimate and that they were selling properties on agreed-upon, fair-market terms.

g.    Defendant HENSCHEL and other co-conspirators would use escrow companies to close transactions and complete transfers of properties in part to make it appear that the transfers were legitimate and carried out on terms to which the targeted homeowners had agreed.

h.    Defendant HENSCHEL and other co-conspirators would structure the transactions with confusing financial and legal terms (including unsecured and limited recourse seller carryback loans, transfers of partial interests in worthless promissory notes, and fictional loans issued to third party borrowers/obligors), which confused the targeted homeowners and made it appear that they had received more than they actually received in property transfers and other transactions.

i.    Once defendant HENSCHEL and other co-conspirators had control of the targeted homeowners' properties, they would encumber them with further mortgages, resell them to innocent third parties for a substantial profit, and/or rent them out to tenants, including tenants whose rents were paid through government-sponsored programs.

j.    Defendant HENSCHEL and other co-conspirators would benefit from the fraudulent filings in other ways, including by: (i) initiating foreclosure proceedings based on the fraudulent

1   filings; (ii) demanding payments from the targeted homeowners on the

2   fraudulent filings before properties could be sold; and (iii) making

3   settlement demands based on the fraudulent filings in negotiations

4   with the targeted homeowners including in connection with threatened

5   or already-filed actions to quiet title.

6         k.   Defendant HENSCHEL and other co-conspirators would

7   file and aggressively defend claims in civil actions, including so-

8   called actions to quiet title, when targeted homeowners tried to

9   reclaim or otherwise assert legal rights to the properties or if they

10  made any effort to try to uncloud title from the fraudulent filings.

11        l.   Defendant HENSCHEL and other co-conspirators would

12  impersonate attorneys and send threatening letters and emails to the

13  targeted homeowners, discouraging them from pursuing claims and

14  causing them to relinquish claims.

15        m.   Defendant HENSCHEL and other co-conspirators would

16  extort settlement payments from homeowners, relying on the fact that,

17  given the high cost of civil litigation, it would often be less

18  expensive for homeowners to pay the co-conspirators than to fight

19  them, particularly when defendant HENSCHEL and other co-conspirators

20  were willing to and did engage in unscrupulous litigation tactics,

21  including pretending to be licensed attorneys, tricking homeowners

22  into signing legal documents (such as stipulated judgments in which

23  homeowners unknowingly disclaimed any interest in their own

24  properties), and engaging in other dishonest and fraudulent acts

25  (such as fabricating documents after the fact, forging signatures and

26  purporting to authenticate the forgeries with stolen notary stamps

27  and/or using complicit notaries, and making other false

28  representations in court filings).  As used herein, the litigation

8

actions that defendant HENSCHEL and other co-conspirators filed, defended, and threatened against the targeted homeowners are called "extortionate litigation"; the settlement demands that they made in connection with these actions are called "extortionate settlement demands"; and the settlements that they received from targeted homeowners are called "extortionate settlement payments."

n.   Defendant HENSCHEL and other co-conspirators would profit from the scheme in a variety of ways, including from money obtained from the resale of stolen properties, from payments on extortionate settlement demands, and from rents earned on stolen properties, in total making more than $10 million from the property-theft-and-litigation-extortion part of the scheme.

Foreclosure & Eviction Delay

o.   In another part of the conspiracy, defendants HENSCHEL and FULMER, along with Surabi, CC-5 and other co-conspirators, would market foreclosure- and eviction-delay services to targeted homeowners and would tell them that, for a fee, they would assist the targeted homeowners in delaying foreclosure and eviction proceedings involving their properties (the "distressed properties").

p.   Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, and FULMER, along with Surabi, Alvarez, CC-4, CC-5, and other co-conspirators, would file and cause others to file bankruptcy petitions in the names of persons and entities other than the targeted homeowners, including in the names of identity theft victims and the names of non-existent people and entities and in many instances numerous "doing business as" or DBA aliases of such identity theft victims and non-existent people and entities ("fictional debtors"), in order to initiate fraudulent bankruptcy cases to be used as part of the scheme.

1    q.    As defendants HENSCHEL, CA. ISLAS, CL. ISLAS, and

2  FULMER and other co-conspirators knew, the bankruptcies were

3  fraudulent because they were filed solely to delay foreclosure and

4  eviction proceedings and not as part of any genuine effort to

5  restructure or eliminate debt, and many were filed in the names of

6  fictional debtors, for whom fictional social security numbers and

7  employer identification numbers were listed in the bankruptcy

8  filings.

9    r.    Defendants HENSCHEL, CA. ISLAS, and CL. ISLAS, along

10 with other co-conspirators, would prepare fake grant deeds purporting

11 to convey interests in the targeted homeowners' properties to

12 fictional debtors and fake trust deeds describing fictional loans

13 supposedly made by fictional debtors and guaranteed by the targeted

14 homeowners.  As discussed herein, the fake grant deeds and fake trust

15 deeds are collectively called the "fake deeds."

16   s.    Defendants HENSCHEL, CA. ISLAS, and CL. ISLAS, along

17 with other co-conspirators, would backdate and cause others to

18 backdate the fake deeds to create the false appearance that the

19 conveyances had taken place prior to the filing of the bankruptcy

20 petitions in order to invoke the protection of the automatic stay

21 that arose upon the filing of the petitions.

22   t.    In reality, as defendants HENSCHEL, CA. ISLAS, and CL.

23 ISLAS knew, the fake deeds were prepared and backdated solely to

24 create the appearance that the fictional debtors held interests in

25 the distressed properties when in fact no such interests were ever

26 actually conveyed, and no money or other consideration was ever paid

27 for any such interests.

28

1    u.    Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, and FULMER,

2    along with Surabi, CC-4, CC-5, and other co-conspirators, would

3    direct the targeted homeowners to sign the fake deeds, have their

4    signatures notarized, file and cause others to file the fake deeds in

5    county recorders' offices, and return copies of the filed fake deeds

6    to the co-conspirators.

7    v.    Defendants HENSCHEL, CA. ISLAS, and CL. ISLAS, along

8    with CC-4 and other co-conspirators, would send and cause others to

9    send copies of the recorded fake deeds and the bankruptcy petitions

10   to lenders and lender representatives, thereby invoking the

11   protection of the automatic stay of the bankruptcy code, in order to

12   stop foreclosure sales.

13   w.    If a lender obtained relief from the automatic stay

14   and scheduled another foreclosure sale, defendants HENSCHEL, CA.

15   ISLAS, CL. ISLAS, and FULMER, along with Surabi, CC-4, CC-5, and

16   other co-conspirators, would cause the targeted homeowner to sign

17   another fake deed, record and cause others to record the new fake

18   deed, and send and cause others to send a copy of the new recorded

19   fake deed and new bankruptcy petition to lenders and lender

20   representatives, in order to again stop the sale.

21   x.    Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, and FULMER,

22   along with Surabi, CC-4, CC-5, and other co-conspirators, would

23   repeat this course of action as long as lenders continued to attempt

24   to foreclose on the distressed properties and the targeted homeowners

25   continued to pay fees, and would thereby continuously delay the sale

26   of the distressed properties, sometimes for years at a time.

27   y.    If targeted homeowners requested reversals of the

28   transfers purportedly implemented by the fake deeds in order to clear

11

1  title to the distressed properties, defendants HENSCHEL, CA. ISLAS,
2  CL. ISLAS, and FULMER, along with other co-conspirators, would
3  sometimes demand that the targeted homeowners pay extortionate fees
4  before they would prepare reconveyance documents purporting to show
5  that the fictional debtors were transferring the fractional interests
6  back to the targeted homeowners.

7       z.   To delay evictions, defendants HENSCHEL, CA. ISLAS,
8  CL. ISLAS, and FULMER, along with Surabi, CC-4, CC-5, and other co-
9  conspirators, would, among other things, make it appear that
10 fictional debtors were occupying the distressed properties as tenants
11 and would file and cause others to file fraudulent legal documents in
12 state court eviction actions to delay eviction proceedings.

13      aa.   Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, and FULMER,
14 along with Surabi, CC-4, CC-5, and other co-conspirators, would also
15 amend existing bankruptcy petitions to add the targeted homeowners'
16 names as DBAs of existing debtors and then send and cause others to
17 send the amended petitions to County Sheriffs' offices, invoking the
18 automatic stay of the bankruptcy code to delay eviction.

19      bb.   In this way, defendants HENSCHEL, CA. ISLAS, CL.
20 ISLAS, and FULMER, along with Surabi, CC-4, CC-5, and other co-
21 conspirators, would interfere with the normal functioning of the
22 state court eviction process, fraudulently depriving the purchasers
23 of distressed properties of possession and use of those properties.

24      cc.   Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, and FULMER,
25 along with Surabi, CC-4, CC-5, and other co-conspirators, would
26 charge the targeted homeowners fees for the illegal foreclosure- and
27 eviction-delay services, collecting more than $7 million in fees for
28 these illegal services in the course of the conspiracy.

Bank Accounts and Aliases Hiding Defendant HENSCHEL's Involvement

dd.   Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, and VELASQUEZ, along with other co-conspirators, would open and cause others to open bank accounts in defendant VELASQUEZ's name, defendant CA. ISLAS's name, defendant CL. ISLAS's name, and in the name of defendant VELASQUEZ's brother in order to hide defendant HENSCHEL's involvement in the fraud.

ee.   Defendant HENSCHEL would direct defendants VELASQUEZ, CL. ISLAS, CA. ISLAS, and other co-conspirators and office workers to cash large checks made payable to them, with defendant VELASQUEZ cashing more than $750,000 in checks and other co-conspirators and office workers cashing additional checks in order to convert fraud proceeds to cash and make the proceeds more difficult to trace.

ff.   Defendants HENSCHEL, CA. ISLAS, CL. ISLAS, and VELASQUEZ, along with other co-conspirators, would hide defendant HENSCHEL's involvement in the scheme through the use of aliases for defendant HENSCHEL including but not limited to "Frank Winston," "Steve Lopez," and "Ron Berman," and through the use of companies, trusts, and other entities and multiple bank accounts controlled by defendant HENSCHEL but held in the name of CA. ISLAS, VELASQUEZ, and other co-conspirators and HENSCHEL-controlled entities.

Affected Financial Institutions

gg.   The fraudulent filings would negatively affect financial institutions, including Bank of America, Wells Fargo, WAMU, JPMorgan Chase, HSBC, Flagstar Bank, and CIG, including in their efforts and ability to: (i) collect payments on loans extended to the targeted homeowners; (ii) foreclose on properties securing those

13

1  loans; and (iii) take possession of those properties following

2  trustee sales undertaken in connection with foreclosure proceedings.

3  Targeted Homeowners

4  hh.   The homeowners who were targeted in the property-

5  theft-and-litigation-extortion part of the conspiracy include:

| Homeowner (Heirs) | Street Address(es) of Homeowners' Property |
|---|---|
| T.A. | East Colorado Street, Glendale, California<br><br>North Jackson Street, Glendale, California (multiple properties)<br><br>Las Lunas Street, Pasadena, California<br><br>East Lexington Drive, Glendale, California |
| R.R.E. (B.G. / A.Y.) | Ruthelen Avenue, Los Angeles, California<br><br>East Avenue S-12, Littlerock, California<br><br>Serendipity Way, Palmdale, California<br><br>Third Avenue, Los Angeles, California (multiple properties) |
| Mar.G. / Man.G. | Burger Avenue, Los Angeles, California<br><br>Garvalia Avenue, Rosemead, California<br><br>Stanford Avenue, South Gate, California<br><br>Strathmore Avenue, Rosemead, California (multiple properties) |
| I.R. | Fair Oaks Avenue, Altadena, California<br><br>East Las Flores Drive, Altadena, California<br><br>Via Maderas Street, Altadena, California<br><br>Village View Drive, Idyllwild, California<br><br>Wapello Street, Altadena, California |
| B.S. | Camellia Avenue, Studio City, California |

| Homeowner (Heirs) | Street Address(es) of Homeowners' Property |
|---|---|
| E.S. (W.S. / V.W.) | Blackhawk Street, Granada Hills, California |
| R.T. | Webster Avenue, San Diego, California |
| L.Y. | South Cordova Street, Burbank, California<br><br>Oxnard Street, Van Nuys, California |

ii. The homeowners who were targeted in the foreclosure-and-eviction-delay part of the conspiracy include:

| Homeowner / Representative | Street Address of Homeowners' Property |
|---|---|
| D.B. (mother J.C.) | Key Route Boulevard, Albany, California |
| C.B., D.V.B. | Beachwood Court, Hayward, California |
| S.C. | Amanda Place, Pleasanton, California |
| C.G. | Donovan Drive, San Leandro, California |
| I.G. | Noble Avenue, Sherman Oaks, California |
| U.G. | Faust Avenue, Woodland Hills, California |
| N.M. | Vineland Avenue, Studio City, California |
| A.N. & P.N. (daughter M.F.) | Fowler Street, Newark, California |
| J.K.S. | Butterfield Drive, Castro Valley, California |
| M.S. | Foster Street, Alameda, California |
| J.W. | Vancouver Common, Fremont, California |

D.   OVERT ACTS

4.   On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants HENSCHEL, CA. ISLAS, CL. ISLAS, VELASQUEZ, and FULMER, together with Alvarez, Surabi, CC-4, CC-5, and others known and unknown to the Grand Jury, committed and caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

Overt Act No. 1: On or about March 25, 2009, defendant HENSCHEL caused the filing of a trust deed on title to property located on Webster Avenue in San Diego, California, fraudulently recording a $48,800 lien in favor of Darby Group.

Overt Act No. 2: On or about October 10, 2010, defendant HENSCHEL sent defendant CL. ISLAS an email with instructions regarding foreclosure and eviction delay, with text that read in part: "I will call you Tuesday regarding [homeowner's] eviction case."

Overt Act No. 3: On or about October 13, 2010, defendant CL. ISLAS sent defendant HENSCHEL an email regarding foreclosure and eviction delay, with text that read in part: "we need to file Answer for the Second Amended Complaint in [homeowner's] case.  Please let me know what to do."

Overt Act No. 4: On or about October 15, 2010, defendant CL. ISLAS sent defendant HENSCHEL an email regarding money transfers between bank accounts.

Overt Act No. 5: On or about October 15, 2010, defendant HENSCHEL send defendant CL. ISLAS an email regarding a homeowner receiving eviction-delay services and instructions to stop work on the file.

1     Overt Act No. 6: On or about December 9, 2010, defendant
2  HENSCHEL sent homeowner N.M. an email attaching a fake deed to help
3  delay foreclosure on property located on Vineland Avenue in Studio
4  City, California, which was serving as collateral for a mortgage in
5  N.M.'s name.

6     Overt Act No. 7: On or about May 31, 2011, defendant HENSCHEL
7  sent an email to Surabi regarding fake deeds to delay foreclosure,
8  with text that read in part: "Sometimes we record a new deed even
9  when there is not a sale date, as it makes it more difficult for them
10 to set a new date."

11    Overt Act No. 8: On or about August 1, 2011, defendant HENSCHEL
12 sent an email to a homeowner representative with text that read in
13 part: "I need the names of 2 people that can say they rent a room at
14 Merridy.  Real people."

15    Overt Act No. 9: On or about August 26, 2011, CC-4 sent an email
16 to defendant HENSCHEL attaching a list of eviction files, which
17 included reference to a property on Merridy Street.

18    Overt Act No. 10: On or about October 18, 2011, CC-4 sent an
19 email to Surabi with text that read in part: "Please call Jessica to
20 get the Deedback.  She is the one who always prepares deedbacks and
21 reconveyances."

22    Overt Act No. 11: On or about October 18, 2011, defendant
23 HENSCHEL sent defendant CL. ISLAS an email about mailing notices of
24 default to required parties as part of the process of foreclosing on
25 homes.

26    Overt Act No. 12: On or about October 20, 2011, defendant
27 HENSCHEL sent defendant CA. ISLAS an email regarding a homeowner in
28 Riverside receiving eviction-delay services.

Overt Act No. 13: On or about October 20, 2011, defendant HENSCHEL sent defendant CL. ISLAS an email with text that read in part: "Can you please prepare a reconveyance and send it to [homeowner representative]."

Overt Act No. 14: On or about November 9, 2011, defendant HENSCHEL sent Surabi an email attaching a fake deed and instructions for homeowner I.G. on how to record the fake deed on property located on Noble Avenue in Sherman Oaks, California, which was serving as collateral for a mortgage in I.G.'s name.

Overt Act No. 15: On or about December 6, 2011, defendant HENSCHEL sent an email to a homeowner representative with instructions on how to forge signatures on a formal court filing to delay a homeowner's eviction, with text that read in part: "Attached is the Notice, along with a signature sample.... have it signed on Page 2, Steve Lopez [a fictional debtor and one of defendant HENSCHEL's aliases]."

Overt Act No. 16: On or about December 20, 2011, CC-5 sent an email to homeowner C.B. giving instruction on how to record a fake deed on property on Beachwood Court in Hayward, California, which was serving as collateral for a loan in C.B.'s spouse's name.

Overt Act No. 17: On or about April 26, 2012, an unidentified co-conspirator sent and caused to be sent a notice of a fraudulent bankruptcy filed in the name of fictional debtor Daryl Lynch and a corresponding fake deed to Quality Loan Servicing Center (a foreclosing trustee) to delay foreclosure of a property on Key Route Boulevard in Albany, California, occupied by homeowner J.C., which was serving as collateral for a mortgage in J.C.'s son's name.

1    Overt Act No. 18: On or about June 12, 2012, Alvarez filed and

2    caused to be filed, under Title 11 of the United States Code, a

3    fraudulent and unauthorized bankruptcy petition in the name of J.M.,

4    an identity theft victim, which was assigned case number 8:12-bk-

5    17281-MW, in the United States Bankruptcy Court for the Central

6    District of California.

7    Overt Act No. 19: On or about July 20, 2012, defendant HENSCHEL

8    emailed CC-4 the bankruptcy petition filed in the name of identity

9    theft victim J.M.

10    Overt Act No. 20: On or about August 1, 2012, defendant CL.

11    ISLAS prepared and sent a reconveyance of a fraudulent trust deed for

12    a homeowner on Flintridge Drive in Glendale, California.

13    Overt Act No. 21: On or about September 28, 2012, an

14    unidentified co-conspirator sent and caused to be sent a notice of a

15    fraudulent bankruptcy filed in the name of fictional debtor Michael

16    Phat Gieng and a corresponding fake deed to Quality Loan Servicing

17    Center (a foreclosing trustee) to delay foreclosure of a property on

18    Key Route Boulevard in Albany, California, occupied by homeowner

19    J.C., which was serving as collateral for a mortgage in J.C.'s son's

20    name.

21    Overt Act No. 22: On or about September 28, 2012, homeowner

22    J.C., in accordance with defendant HENSCHEL's instructions, sent a

23    recorded fake deed to co-conspirators to delay foreclosure of

24    property on Key Route Boulevard in Albany, California, which was

25    serving as collateral for a loan in J.C.'s son's name.

26    Overt Act No. 23: On or about October 10, 2012, CC-4 sent

27    defendant HENSCHEL an email with text that read: "Mickey, the current

28    BK petition # is 12-19731-TWD," which was the bankruptcy case number

1  for the bankruptcy filed in the name of fictional debtor Michael Phat

2  Gieng.

3       Overt Act No. 24: On or about October 11, 2012, defendant FULMER

4  sent Surabi an email confirming receipt of a fake deed prepared for

5  homeowner C.G. to delay foreclosure on property on Donovan Drive in

6  San Leandro, California, which was serving as collateral for a

7  mortgage in C.G.'s name.

8       Overt Act No. 25: On or about October 15, 2012, homeowner C.G.,

9  at defendant FULMER's instruction, sent defendant FULMER an executed

10  document titled "Authorization to," which purported to authorize

11  defendant FULMER "to conduct and initiate any business matters

12  relevant for the purpose of structuring a Deed of Trust for [C.G.'s]

13  property."

14       Overt Act No. 26: On or about October 15, 2012, an unidentified

15  co-conspirator sent and caused to be sent a notice of a fraudulent

16  bankruptcy filed in the name of fictional debtor Michael Phat Gieng

17  and a corresponding fake deed to Title Trust Deed (a foreclosing

18  trustee) to delay foreclosure of a property on Donovan Drive in San

19  Leandro, California, which was serving as collateral for a mortgage

20  in C.G.'s name.

21       Overt Act No. 27: On or about October 16, 2012, CC-4 sent

22  homeowner C.G. an email notifying C.G. that the trustee sale of

23  C.G.'s property on Donovan Drive in San Leandro, California had been

24  delayed from October 15, 2012 to November 15, 2012, and attaching an

25  "invoice regarding the postponement."

26       Overt Act No. 28: On or about October 19, 2012, defendant

27  HENSCHEL and other co-conspirators caused the filing of a grant deed

28  on title to property located on Burger Avenue in Los Angeles,

California, fraudulently recording a purported transfer from homeowners Mar.M. and Man.M. to PRIME VENTURES, a trust.

Overt Act No. 29: On or about October 19, 2012, defendant HENSCHEL and other co-conspirators caused the filing of a trust deed on title to property located on Burger Avenue, in Los Angeles, California, fraudulently recording a $50,000 lien in favor of MOUNTAIN HOLDINGS TRUST.

Overt Act No. 30: On or about October 22, 2012, Surabi sent an email to homeowner P.N. (through P.N.'s daughter M.F.) responding to a question regarding whether the foreclosure sale had been stopped with respect to property on Fowler Street in Newark, California, which was serving as collateral for a mortgage in P.N.'s name, with text that read: "It has not because we haven't sent in the documents yet. It's better to wait and send it a day or two before the sale date because if we send it early then they will start working on dismissing it right away."

Overt Act No. 31: On or about October 31, 2012, Surabi sent an email to defendant FULMER regarding a question about a homeowner's liability for the fictional loan described in the fake deed, and a request to change the description of an irrevocable trust to a revocable trust, with text that read in part: "You can change it to Revocable on the deed. Doesn't matter Gene, you know we remove the lean [sic] anytime they ask us to anyway. The 65K lean [sic] has to be there because if the amount is low then the bank can pay it off and foreclose."

Overt Act No. 32: On or about November 15, 2012, defendant VELASQUEZ cashed a check in the amount of $16,000, drawn on a bank account at Bank of America, account ending in 6577, maintained in the

name of "The Co Value Line Service Trust," on which defendant VELASQUEZ's brother was a signatory (the "Value Line Service Trust Account").

Overt Act No. 33: On or about November 16, 2012, defendant VELASQUEZ cashed a check in the amount of $9,600, drawn on the Value Line Service Trust Account.

Overt Act No. 34: On or about November 20, 2012, Surabi sent an email to homeowner M.S. giving instructions on how to record a fake deed on property on Foster Street in Alameda, California, which was serving as collateral for a mortgage in M.S.'s name.

Overt Act No. 35: On or about November 21, 2012, Surabi sent an email to homeowner M.S. forwarding a message from defendant HENSCHEL in response to a question regarding the homeowner's liability for the fictional loan described in the fake deed, stating: "You are not liable for any amount."

Overt Act No. 36: On or about November 23, 2012, a potential homeowner sent an email to defendant CA. ISLAS with text that read: "Hi called today and asked to call back for Mino since he does foreclosures."

Overt Act No. 37: On or about November 29, 2012, an unidentified co-conspirator sent and caused to be sent a notice of a bankruptcy filing to delay foreclosure of property on Butterfield Drive in Castro Valley, California, which was serving as collateral for a mortgage in homeowner J.K.S.'s name; attached was fabricated documentation that purported to show a bankruptcy petition filed in the name of debtor Roberta Lopez, which does not correspond to any actual bankruptcy filing.

Overt Act No. 38: On or about November 30, 2012, defendant VELASQUEZ cashed a check in the amount of $9,500, drawn on the Value Line Service Trust Account.

Overt Act No. 39: On or about December 5, 2012, defendant VELASQUEZ cashed a check in the amount of $9,530, drawn on the Value Line Service Trust Account.

Overt Act No. 40: On or about December 10, 2012, CC-5 sent defendant CL. ISLAS an email asking her to prepare a reconveyance of fraudulently recorded deeds.

Overt Act No. 41: On or about December 17, 2012, defendant FULMER sent an email to Surabi regarding releasing a lien on property located on Amanda Place in Pleasanton, California, which was serving as collateral for a mortgage in homeowner S.C.'s name, with text that read: "Urgent that we get Release of Lien immediately!!!"

Overt Act No. 42: On or about December 17, 2012, Surabi sent defendant HENSCHEL an email regarding defendant FULMER's email about the property in Pleasanton, California, with text that read in part: "We lost his house and the owner wants the release of lien and the BK info.  I told him I can't provide the BK info unless there is an attorney involved and I also told him that I might not be able to get him the release until Friday.  Gene is panicking thinking the owner is going to report us to the District Atty."

Overt Act No. 43: On or about January 4, 2013, an unidentified co-conspirator sent and caused to be sent a notice of a fraudulent bankruptcy filed in the name of fictional debtor Gerardo Gonzalez and a corresponding fake deed to Quality Loan Servicing Center (a foreclosing trustee) to delay foreclosure of a property on Key Route

Boulevard in Albany, California, occupied by homeowner J.C., which

was serving as collateral for a mortgage in J.C.'s son's name.

Overt Act No. 44: On or about January 15, 2013, CA. ISLAS sent

CC-4 and email with text that read: "Please sent Trust Deeds instead

of Grant Deeds on any of Pats [sic] or Shara's files.  Thank You,

Mino."

Overt Act No. 45: On or about January 16, 2013, CL. ISLAS sent

defendant HENSCHEL an email with the subject line: "Jessica pending

office work" and text that read in part: "1. I did not do the bk

stuff for Crazy girl . . . because she had send [sic] the wrong

papers on friday 2. Did you review the Trust for the GP 1 so i can

strart [sic] working on them ....."

Overt Act No. 46: On or about January 25, 2013, defendant

HENSCHEL and other co-conspirators caused the filing of a trust deed,

on title to property located on Burger Avenue in Los Angeles,

Garvalia Avenue in Rosemead, and Stanford Avenue in South Gate, all

in California, fraudulently recording a $65,000 lien in favor of

Cerritos West Group.

Overt Act No. 47: On or about February 6, 2013, an unidentified

co-conspirator sent and caused to be sent a notice of a fraudulent

bankruptcy filed in the name of fictional debtor Zare Bekerejian and

a corresponding fake deed to Quality Loan Servicing Center (a

foreclosing trustee) to delay foreclosure of a property on Key Route

Boulevard in Albany, California, occupied by homeowner J.C., which

was serving as collateral for a mortgage in J.C.'s son's name.

Overt Act No. 48: On or about February 6, 2013, Surabi sent

emails to homeowner J.W. giving instruction on how to record a fake

24

1  deed on property on Vancouver Common in Fremont, California, which
2  was serving as collateral for a mortgage in J.W.'s name.

3       Overt Act No. 49: On or about February 13, 2013, defendant
4  HENSCHEL sent an email to defendant CL. ISLAS asking her to prepare
5  reconveyance documents for a homeowner that was a client of defendant
6  FULMER.

7       Overt Act No. 50: On or about February 14, 2013, CC-4 sent
8  homeowner J.W. an invoice for $750 for foreclosure delay services.

9       Overt Act No. 51: On or about February 14, 2013, an unidentified
10 co-conspirator sent and caused to be sent a notice of a fraudulent
11 bankruptcy filed in the name of fictional debtor Zare Bekerejian and
12 a corresponding fake deed to ATC Assessment Collection (a foreclosing
13 trustee) to delay foreclosure of a property on Vancouver Common in
14 Fremont, California, which was serving as collateral for a mortgage
15 in J.W.'s name.

16      Overt Act No. 52: On or about February 18, 2013, Surabi
17 forwarded an email to defendant HENSCHEL from a homeowner
18 representative with a subject line that read in part "He wants money
19 back" and the text of the forwarded email reading in part: "Sean; Bad
20 news we wont be moving forward.  I would like a refund check prorated
21 from 2/19 through 2/28 for not stoping [sic] the foreclosure as you
22 promised.  After speaking with two attorney [sic] there is a
23 consensus that (1) The Banks are being defrauded by the delay tactic.
24 (2) I could lose my Real Estate licence [sic].  (3) The bank could
25 sue me for mortgage fraud.  You might want to consider your next
26 Career move."

27      Overt Act No. 53: On or about February 22, 2013, J.W., at
28 Surabi's instruction deposited $750 by check into the Value Line

25

1   Service Trust Account, in payment for delaying foreclosure on
2   property on Vancouver Common in Fremont, California, which was
3   serving as collateral for a mortgage in J.W.'s name.

4        Overt Act No. 54: On or about April 5, 2013, defendant CL. ISLAS
5   sent an email to a homeowner representative with text that read in
6   part: "We received your email regarding the Demand and Reconveyance
7   for property . . . I am not familiar with the account status.
8   However, I prepare the necessary documents, Instructions,
9   Reconveyance and Trust Certification for the title company, to be
10  signed by Mr. Velasquez."

11       Overt Act No. 55: On or about May 28, 2013, CC-5 sent defendant
12  CL. ISLAS an email requesting a reconveyance of a fraudulent deed on
13  a homeowner's property.

14       Overt Act No. 56: On or about June 4, 2013, CC-4 sent defendant
15  HENSCHEL an email attaching a bankruptcy petition in the name of
16  fictional debtor Michael Phat Gieng, and a fake deed filed on
17  property on Noble Avenue in North Hills, California, which was
18  serving as collateral for a mortgage in L.S.R.C.'s name, with text
19  read in part: "Mickey, Here is the BK petition and deed for
20  [homeowner]'s house."

21       Overt Act No. 57: On or about June 10, 2013, homeowner M.S., at
22  Surabi's instruction, sent confirmation of a deposit of $700 into a
23  Bank of America account ending in 6032, in payment for delaying
24  foreclosure on property on Foster Street in Alameda, California,
25  which was serving as collateral for a mortgage in M.S.'s name.

26       Overt Act No. 58: On or about July 15, 2013, Surabi sent
27  defendant HENSCHEL and CC-4 an email with text that read: "When I
28  cancel files I will include the home owners in the email and

1   sometimes tell you to dismiss the bk.  I understand that you are not

2   going to but I want to scare them."

3       Overt Act No. 59: On or about February 11, 2015, defendant

4   HENSCHEL and other co-conspirators caused the filing of a trust deed

5   on title to property located on East Colorado Street in Glendale,

6   California, fraudulently recording a $590,000 lien in favor of the

7   Arrowhead Financial Group Trust.

8       Overt Act No. 60: On or about February 11, 2015, defendant

9   HENSCHEL and other co-conspirators caused the filing of a trust deed

10  on title to property located on Las Lunes Street in Pasadena,

11  California and North Jackson Street in Glendale, California,

12  fraudulently recording a $600,000 lien in favor of the Arrowhead

13  Financial Group Trust.

14      Overt Act No. 61: On or about February 11, 2015, defendant

15  HENSCHEL and other co-conspirators caused the filing of a trust deed

16  on title to property located on East Lexington Avenue in Glendale,

17  California, fraudulently recording a $700,000 lien in favor of the

18  Arrowhead Financial Group Trust.

19      Overt Act No. 62: On or about March 22, 2016, defendant HENSCHEL

20  and other co-conspirators caused the filing of an abstract of

21  judgment on title to property located on Blackhawk Street in Granada

22  Hills, California, fraudulently recording a $253,774.98 lien in favor

23  of "California Techno Assist, a General Partnership."

24      Overt Act No. 63: On or about July 8, 2016, defendant HENSCHEL

25  and other co-conspirators caused the filing of an assignment of a

26  trust deed from Darby Group to the Laguna 2010 Trust, fraudulently

27  recording a purported assignment of a $48,800 lien on property

28  located on Webster Avenue in San Diego, California.

1    Overt Act No. 64: On or about February 23, 2017, defendant
2  HENSCHEL and other co-conspirators caused a trust deed to be recorded
3  on title to property located on Via Maderas Street in Altadena,
4  California, fraudulently recording a $57,500 lien in favor of The
5  Altadena 2017 Trust No. 2.

6    Overt Act No. 65: On or about September 19, 2017, defendant
7  HENSCHEL filed and caused the filing of a cross complaint in an
8  action involving a $48,800 trust deed filed on property on Webster
9  Avenue in San Diego, California, falsely asserting the legitimacy of
10  the loan described in the deed.

11    Overt Act No. 66: On or about January 29, 2018, defendant
12  HENSCHEL sent false and misleading information to an attorney for
13  homeowner R.T., falsely indicating that he had no involvement in
14  Darby Group or the Laguna 2010 Trust (entities on whose behalf a
15  $48,800 lien was recorded on property on Webster Avenue in San Diego,
16  California) when the entities were alter egos for defendant HENSCHEL
17  controlled through co-defendant CA. ISLAS.

COUNTS TWO THROUGH NINE

[18 U.S.C. §§ 1341, 2]

5.    The Grand Jury hereby repeats and realleges paragraphs 1,
3, and 4 of this First Superseding Indictment, including all
subparagraphs, as if fully set forth herein.

A.    THE FRAUDULENT SCHEME

6.    Beginning on a date unknown but at least as early as in or
about March 2009 and continuing through at least in or about January
2018, in Los Angeles County, within the Central District of
California, and elsewhere, defendants HENSCHEL, CA. ISLAS, CL. ISLAS,
VELASQUEZ, and FULMER, together with Alvarez, Surabi, and others
known and unknown to the Grand Jury, aiding and abetting each other,
knowingly and with intent to defraud, devised, participated in,
executed and attempted to execute a scheme to defraud homeowners,
mortgage lenders, and purchasers of foreclosed properties as to
material matters, and to obtain money and property from homeowners,
mortgage lenders, and purchasers of foreclosed properties by means of
material false and fraudulent pretenses, representations, and
promises, and the concealment of material facts, which scheme
affected financial institutions within the meaning of Title 18,
United States Code, Section 20.

7.    The fraudulent scheme was carried out, in substance, in the
manner and through the means described in paragraphs 1, 3, and 4,
including all subparagraphs, of this First Superseding Indictment.

B.    USE OF THE MAILS

8.    On or about the dates set forth below, within the Central
District of California and elsewhere, defendants HENSCHEL, CA. ISLAS,
CL. ISLAS, VELASQUEZ, and FULMER, for the purpose of executing and

attempting to execute the above-described scheme to defraud,
willfully caused the following items to be placed in an authorized
depository for mail matter to be sent and delivered by the United
States Postal Service, and to be deposited with and delivered by a
commercial interstate carrier, according to directions thereon:

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| TWO | 6/14/12 | Grant deed, bearing instrument number 20120834881, recorded in Los Angeles County, on property located on Faust Avenue, Woodland Hills, California, fraudulently recording purported transfer of property to XCEL ENTERPRISE, a trust, mailed from Los Angeles County Recorder's Office to address listed on deed. |
| THREE | 9/24/12 | Grant deed, bearing instrument number 20121333483, recorded in Los Angeles County, on property located on Vineland Avenue, Studio City, California, fraudulently recording purported transfer of property to TEAM OAK, a trust, mailed from Los Angeles County Recorder's Office to address listed on deed. |
| FOUR | 10/22/12 | Trust deed, bearing instrument number 20121592400, recorded in Los Angeles County, on property located on Strathmore Avenue, Rosemead, California, fraudulently recording $40,000 lien in favor of MOUNTAIN HOLDINGS 2009 TRUST, mailed from Los Angeles County Recorder's Office to address listed on deed. |
| FIVE | 10/22/12 | Grant deed, bearing instrument number 20121592401, recorded in Los Angeles County, on property located on Strathmore Avenue, Rosemead, California, fraudulently recording purported transfer of property to PRIME VENTURES, a trust, mailed from Los Angeles County Recorder's Office to address listed on deed. |

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| SIX | 1/29/13 | Package with instructions to Metrolink Courier to file bankruptcy petition in the District of New Mexico in the name of fictional debtor Marcus Dwayne, which was subsequently filed and assigned case number 13-10257-t7, sent from Van Nuys, California, to Albuquerque, New Mexico, via interstate commercial carrier Federal Express. |
| SEVEN | 2/5/13 | Package with instructions to Metrolink Courier to file bankruptcy petition in the District of New Mexico in the name of fictional debtor George Stevenson, which was subsequently filed and assigned case number 13-10331-t7, sent from Van Nuys, California, to Albuquerque, New Mexico, via interstate commercial carrier Federal Express. |
| EIGHT | 2/24/15 | Trust deed, bearing instrument number 20150154370, recorded in Los Angeles County, on property located on Las Lunes Street, Pasadena, and North Jackson Street, Glendale, California, fraudulently recording $600,000 lien in favor of Arrowhead Financial Group Trust, mailed from Los Angeles County Recorder's Office to address listed on deed. |
| NINE | 1/17/17 | Notice of default, bearing instrument number 2017-0006339, recorded in San Diego County, on property located on Webster Avenue, San Diego, fraudulently recording a notice of default on purported loan dated March 25, 2009, mailed from San Diego County Recorder's Office to an address in Van Nuys, California. |

COUNTS TEN THROUGH SEVENTEEN

[18 U.S.C. §§ 157(1), 2]

9.    The Grand Jury hereby repeats and realleges paragraphs 1, 3, and 4, of this First Superseding Indictment, including all subparagraphs, as if fully set forth herein.

A.    THE FRAUDULENT SCHEME

10.    Beginning on a date unknown but no later than in or about October 2010 and continuing through at least in or about July 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENSCHEL, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised and executed a scheme to defraud homeowners, mortgage lenders, and purchasers of foreclosed properties as to material matters.

11.    The fraudulent scheme was carried out, in substance, in the manner and through the means described in paragraphs 1, 3, and 4 including all subparagraphs, of this First Superseding Indictment.

B.    BANKRUPTCY FILINGS FOR THE PURPOSE OF EXECUTING THE FRAUDULENT SCHEME

12.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENSCHEL, together with others known and unknown to the Grand Jury, aiding and abetting each other, for the purpose of executing the fraudulent scheme described above, filed and willfully

//

//

//

//

1  caused others to file the following petitions under Title 11 of the

2  United States Code:

| COUNT | DATE | BANKRUPTCY PETITIONS |
|-------|------|----------------------|
| TEN | 6/12/12 | Bankruptcy petition in the name of identity theft victim J.M., assigned case number 8:12-bk-17281-MW, in the Central District of California. |
| ELEVEN | 6/22/12 | Bankruptcy petition in the name of identity theft victim A.A., assigned case number 2:12-bk-31732-WB, in the Central District of California. |
| TWELVE | 6/22/12 | Bankruptcy petition in the name of fictional debtor Dawon Oldham, assigned case number 2:12-bk-31733-BB, in the Central District of California. |
| THIRTEEN | 9/24/12 | Bankruptcy petition in the name of fictional debtor Michael Phat Gieng, assigned case number 12-19731-TWD, in the Western District of Washington. |
| FOURTEEN | 12/19/12 | Bankruptcy petition in the name of fictional debtor Gerardo Gonzalez, assigned case number 12-35541-HRT, in the District of Colorado. |
| FIFTEEN | 1/14/13 | Bankruptcy petition in the name of fictional debtor Zare Bekerejian, assigned case number 13-10446-ABC, in the District of Colorado. |
| SIXTEEN | 1/30/13 | Bankruptcy petition in the name of fictional debtor Marcus Dwayne, assigned case number 13-10257-t7, in the District of New Mexico. |
| SEVENTEEN | 2/6/13 | Bankruptcy petition in the name of fictional debtor George Stevenson, assigned case number 13-10331-t7, in the District of New Mexico. |

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

13.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction under Counts One through Nine of this First Superseding Indictment.   Each defendant so convicted shall forfeit the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including but not limited to the following:

- Real property located at 7109 White Oak Avenue, Reseda, California;

- Real property locate at 6737 Morella Avenue, North Hollywood, California;

- Real property located at 1950 Las Lunas Street, Pasadena, California;

- Real property located at 345 North Jackson Street, #101, Glendale, California;

- Real property located at 345 North Jackson Street, #303, Glendale, California;

- Real property located at 345 North Jackson Street, #308, Glendale, California;

- Real property located at 1221 East Colorado Street, Glendale, California; and

1     • Real property located at 600 East Lexington Drive,
2 Glendale, California.

3     (b) To the extent such property is not available for forfeiture,
4 a sum of money equal to the total value of the property described in
5 subparagraph (a).

6     14. Pursuant to Title 21, United States Code, Section 853(p),
7 as incorporated by Title 18, United States Code, Section 982(b) and
8 Title 28, United States Code, Section 2461(c), any defendant so
9 convicted shall forfeit substitute property, up to the total value of
10 the property described in the preceding paragraph if, as the result
11 of any act or omission of said defendant, the property described in
12 the preceding paragraph, or any portion thereof: (a) cannot be
13 located upon the exercise of due diligence; (b) has been transferred,
14 sold to or deposited with a third party; (c) has been placed beyond
15 the jurisdiction of the court; (d) has been substantially diminished
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

1  in value; or (e) has been commingled with other property that cannot

2  be divided without difficulty.

3

4                         A TRUE BILL

5                         _/S/_____

6                         Foreperson

7

8  TRACY WILKISON
   Attorney for the United States,
9  Acting Under Authority Conferred
   by 28 U.S.C. § 515

10  Scott Garringer
    Deputy Chief, Criminal Division For,
11  LAWRENCE S. MIDDLETON
    Assistant United States Attorney
12  Chief, Criminal Division

13  RANEE A. KATZENSTEIN
    Assistant United States Attorney
14  Chief, Major Frauds Section

15  JILL FEENEY
    Assistant United States Attorney
16  Deputy Chief, Major Frauds Section

17  KERRY L. QUINN
    Assistant United States Attorney
18  Major Frauds Section

19

20

21

22

23

24

25

26

27

28